IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| **Cody Champagne on behalf himself of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>*Plaintiff,*<br><br>v.<br><br>**Reata Restaurants Inc. and Reata Restaurants Management Co. LLC,**<br><br>*Defendants.* | No.   19-28<br><br>**COLLECTIVE ACTION COMPLAINT** |

## COLLECTIVE ACTION COMPLAINT

Cody Champagne ("Plaintiff") on behalf of himself and all others similarly situated files this Complaint against Reata Restaurants Management Co. LLC and Reata Restaurants Inc. for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA").

### I.   INTRODUCTION

1. "There can be no doubt that the purpose of the FLSA was and is to protect interstate employees by denying their employers the tool of toying with workers' wages when battling in the competitive market." *Martinez, v. Behring's Bearings Service, Inc.*, 501 F.2d 104, 107 (5th Cir. 1974). Here, despite only paying its servers $2.13 per hour, Reata chooses to toy with its servers' wages in defiance of the FLSA by requiring its servers to pay for a portion of Reata's costs of doing business.

2. For instance, when presenting the dining bill to customers, Reata requires its servers to present the bill to customers in a hand-made, leather check presenter and a Reata ink pen, which

1

are both imprinted with Reata's name and logo. Despite Reata requiring its servers to use the Reata-branded check presenters and ink pens, Reata does not bear the cost of these leather check presenters nor does Reata bear the cost of the Reata branded ink pens. Instead of Reata covering these costs of doing business, Reata chooses to illegally shift to its servers its costs of doing business. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise."); *see also* 29 C.F.R. §§ 531.3(d)(2) and 531.32(c).

3. The simple reason Reata chooses to illegally charge its servers for the check presenters, ink pens, and its other business expenses (discussed below) is so Reata can increase its bottom line by illegally shifting its operating expenses onto the shoulders of its servers that Reata only pays $2.13 per hour.

4. In addition to illegally charging its servers for its operating expenses, Reata also requires its servers to work for $2.13 per hour while the restaurant is closed and there is no opportunity to earn tips. Specifically, during times that Reata is closed and while paying its servers $2.13 per hour, Reata requires its servers to perform duties unrelated to their serving jobs such as setting up and tearing down private events, moving chairs and tables, taking out the trash, mopping, vacuuming, and other duties unrelated to serving customers. For Reata, the decision is simple; it is cheaper for Reata to pay its servers $2.13 per hour to do this work than to properly staff the restaurant with employees who Reata must pay at least the full minimum wage of $7.25 per hour.

5. Since other aggrieved servers exist that are similarly situated to Plaintiff, Plaintiff brings this action as a collective action under section 216(b) of the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of himself and all other similarly situated servers who work or worked for Reata in the past three (3) years.

## II. PARTIES

6. Plaintiff, Cody Champagne, is an individual and resident of Texas. Plaintiff was employed by Defendants as a server from approximately July 2018 until May 18, 2019. Plaintiff has consented to be a party-plaintiff to this action, as indicated by his notice of consent attached to this Complaint as "*Exhibit A*."

7. The Class Members are all of Defendants' current and former servers. Class Members will "opt in" pursuant to Section 216(b) of the FLSA. *See* 29 U.S.C. § 216(b).

8. At all material times, Plaintiff and Class Members were "employees" of Defendants as defined in 29 U.S.C. § 203(e)(1) and relevant case law. *See e.g.*, *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993).

9. At all material times, Plaintiff and Class Members were all non-exempt under 29 U.S.C. § 213(a)(1).

10. Defendant, Reata Restaurants Management Co. LLC., is a Texas entity that is currently authorized to do business in Texas and is doing business in Texas. Reata Restaurants management Co. LLC is the name of the entity from which Plaintiff's paychecks are drawn. Reata Restaurants Management Co. LLC may be served with process by serving its registered agent, Cathy Snoddy, at 1401 North Bowie Drive, Weatherford, Texas 76086, or wherever it may be found.

11. Defendant, Reata Restaurants Inc., is a Texas corporation that is currently authorized to do business in Texas and is doing business in Texas. The restaurant's liquor license is in the name of Reata Restaurants Inc. Reata Restaurants Inc. may be served with process by serving its registered agent, Cathy Snoddy, at 1401 North Bowie Drive, Weatherford, Texas 76086, or wherever it may be found.

### III. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this matter because Plaintiff asserts claims arising under federal law. *See* 28 U.S.C. § 1331. Specifically, Plaintiff asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*

13. This Court also has personal jurisdiction over each of the Defendants to this action inasmuch as each Defendants each reside in Texas and are employing Texas residents to work at Defendants' restaurants located in Texas.

14. Venue is proper in the Pecos Division of the United States District Court for the Western District of Texas under 29 U.S.C. § 1391(b)(1). Defendants own and operate the Reata restaurant location in Alpine, Texas. By way of its business located in Alpine, Texas, Defendants do substantial business in this district and division and are deemed to reside in Alpine, Brewster County, Texas. *See* 29 U.S.C. § 1391(d). Accordingly, venue in this Court is proper under 28 U.S.C. § 1391(b)(1).

### IV. FLSA COVERAGE

15. Defendants own and operate the restaurants commonly known as Reata with locations in Alpine, Texas and Fort Worth, Texas.

16. At all relevant times, Defendants have each, individually and jointly, acted directly or indirectly, in the interest of an employer with respect to Plaintiff and Class Members.

17. At all times mentioned, Defendants have each, individually and jointly, been an "employer" with respect to Plaintiff and Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18. At all relevant times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29

4

U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). During their employment, Plaintiff and Class Members waited on customers, took food and drink orders, processed credit card payments, answered questions regarding the menu, removed dinnerware from tables, and performed other tasks including tasks unrelated to their jobs as servers.

19. At all relevant times, Defendants have operated as a "single enterprise" within the meaning of Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1). Defendants have been, through unified operation and common control, engaged in the performance of related activities for a common business purpose – namely, the operation of the Reata restaurants. *See Brennan* v. *Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Reich v. Bay, Inc.,* 23 F.3d 110, 113 (5th Cir. 1994). Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

20. Defendants run each Reata restaurant identically, or virtually identically, and Defendants' customers can expect the same kind of customer service regardless of the location.

21. Defendants advertise together on the same website,[1] share common management between restaurant locations, have similar ownership, and maintain the same principal office at: 1401 North Bowie Drive, Weatherford, Texas 76086.

---

[1] https://www.reata.net/

5

## V.     FACTS

22.     From approximately July 2018 until May 18, 2019, Plaintiff worked for Defendants as a server at the Reata restaurant located in downtown Fort Worth, Texas.

23.     As part of the payment scheme that Defendants used to pay Plaintiff and Class Members, Defendants paid Plaintiff and Class Members a direct hourly wage of $2.13 per hour for all hours worked during their employment. Defendants' payment scheme relies on tips generated from customers to supplement Plaintiff and Class Members' subminimum hourly wage. In other words, Defendants rely on the tips generated from customers to supplement Plaintiff and Class Members' wages to bring their effective rate of pay – with tips included – up to the required minimum wage of $7.25 per hour. The practice of relying on customer tips to supplement a server's $2.13 hourly wage is known as taking "tip credit." *See* 29 U.S.C. § 203(m); *see Bernal v. Vankar Enters.*, 579 F. Supp. 2d 804, 808 (W.D. Tex. 2008) ("Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits.")

24.     The use of the tip credit results in huge savings to Defendants because Defendants pay Plaintiff and Class Members at the significantly reduced wage of $2.13 per hour. The tips that make up the overwhelming majority of Plaintiff and Class Members' total wages do not come from the Defendants, but rather these tips come directly from customers.

25.     Though, in utilizing the tip credit defense, the FLSA specifically sets forth the conditions that the employer must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *See* 29 U.S.C. § 203(m). "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may obtain a . . . credit from the receipt of tips toward your obligation

to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

26. If the employer fails to adhere to the FLSA's very specific requirements, it loses its right avail itself of the tip credit. *See Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

27. Defendants violated Section 203(m), an affirmative defense by 1) requiring Plaintiff and Class Members to pay for Defendants' business expenses; and 2) failing to notify Plaintiff and Class Members of the tip credit provisions. Defendants' actions are in violation of Section 203(m) and therefore, Defendants violated the minimum wage as cited in 29 U.S.C. § 206.

28. It was Defendants' pattern and practice to shift its costs of doing business to Plaintiff and Class Members by requiring them to pay for various business expenses. Specifically, Defendants required each of its servers – Plaintiff and Class Members – to pay for Reata-logoed ink pens, hand-made leather check presenters with Reata's logo, wine keys, pen lights, uniforms, and aprons. *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage.).

29. It was the pattern, practice, and policy for Defendants to charge Plaintiff and Class

Members for each of these items on a consistent and regular basis. It was Defendants' pattern and practice to requires all servers to pay for these items all while Defendants only paid them an hourly wage of $2.13 per hour.

30.     Defendants' pattern and practice of requiring Plaintiff and Class Members to pay for these expenses violates federal law as such is a retention of tips and violates condition two of 29 U.S.C. § 203(m). *See also,* 29 C.F.R. 531.3(d)(1), (2) & 29 C.F.R. 531.32(c).

31.     Defendants also did not inform Plaintiff and Class Members of the provisions of the tip credit, violating condition one of 29 U.S.C. § 203(m). *See* 29 C.F.R. § 531.59(b). If an employer fails to adhere to the FLSA's very specific requirements, it loses its right avail itself of the tip credit. *See Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (stating that if the penalty for failing to adhere to the FLSA's notice provisions of the tip credit seems harsh, "it is also true that notice is not difficult for the employer to provide.")

32.     Accordingly, based upon the illegal conduct of Defendants as set forth herein, Defendants are disavowed from using the tip-credit as a defense to the payment of the full minimum wage.

33.     In addition to illegally charging its servers for business expenses, Reata also required Plaintiff and Class Members to work for $2.13 per hour while the restaurant was closed and there was no opportunity to earn tips. Specifically, during hours that Reata was closed and while paying $2.13 per hour, Reata required Plaintiff and Class Members to perform nontipped duties unrelated to their serving jobs such as setting up and tearing down private events, moving chairs and tables, taking out the trash, mopping, sweeping and vacuuming floors, and other duties unrelated to serving tables.

34.     Defendants illegally paid Plaintiff and Class Members $2.13 per hour for all hours

worked, including the periods during which Plaintiff and Class Members were performing nontipped duties. *See Driver v. Apple Illinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work").

35. Moreover, Defendants regularly and frequently required Plaintiff and Class Members to perform a number of non-tipped duties related to their tipped occupation, including but not limited to: wiping down tables, setting tables, busing tables, and other "side-work." These non-tipped duties related to Plaintiff and Class Members' tipped occupation exceeded twenty percent (20%) of their time worked during each workweek. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time"). Defendants illegally paid Plaintiff and Class Members a sub-minimum wage for all hours that Plaintiff worked, including the time Plaintiff and Class Members were performing nontipped duties.

36. Defendants actions have resulted in the forfeiture of their ability to rely on the "tip credit" and therefore, owe Plaintiff and Class Members the full minimum wage plus other damages provided for under the FLSA for each and every hour worked.

37. Defendants' method of paying Plaintiff and Class Members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

38. Defendants' method of paying Plaintiff and Class Members in violation of the

FLSA was willful and was not based on good-faith and reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

39. During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as used to compensate Plaintiff. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.

## VI.  COLLECTIVE ACTION ALLEGATIONS

40. The foregoing paragraphs are fully incorporated herein.

41. Plaintiff (the "Collective Action Representatives") brings this FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action"). In addition to the claims of the individually named Plaintiff, Plaintiff brings this action as a representative of all similarly situated former and current servers who worked at any one or more of Defendants' restaurant locations. The proposed collective of similarly situated employees ("Class Members") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All servers who worked at one or more of Defendants' restaurant locations within the three (3) year period preceding the filing of this lawsuit through the final disposition of this matter.**

42. FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

43. Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying employees in violation of the FLSA. Plaintiff is aware of other employees

10

who have worked at one or more of Defendants' restaurant locations as servers and who were subjected to the same unlawful payment policies as Plaintiff. Plaintiff is aware that Defendants' illegal practices or policies have been uniformly imposed on the Class Members.

44. Plaintiff and the Class Members have the same pay structure, have the same job duties, and were also required to pay for the aforementioned operating expenses. Plaintiff and Class Members are all victims of Defendants' unlawful compensation scheme.

45. Plaintiff and the Class Members are all non-exempt for purposes of minimum wage payments under the FLSA.

46. Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Class Members. Plaintiff's experience in regard to pay is typical of the experiences of the Class Members.

47. Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The Class Members' claims arise from a common nucleus of facts. Specifically, Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiff and Class Members.

### VII. CAUSE OF ACTION: MINIMUM WAGE VIOLATIONS PURSUANT TO THE FAIR LABOR STANDARDS ACT

48. The foregoing paragraphs are fully incorporated herein.

49. During the relevant period, Defendants have violated and are violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiff and Class Members in an enterprise engaged in commerce or in the production of commerce within

the meaning of the FLSA, as aforesaid, and failing to pay such employees at the full minimum wage rate of $7.25 per hour.

50. Section 206 of the FLSA requires employers to compensate employees at a rate of not less than the minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a). However, for tipped employees, employers may take a "tip credit" against payment of the full minimum wage in an amount up to $5.12 per hour, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relieved of their obligation to pay the full minimum wage and are able to pay employees as little as $2.13 per hour plus tips.

51. "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may obtain a . . . credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

52. Here, Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants (1) failed to inform tipped Plaintiff and Class Members of the tip credit pursuant to 29 U.S.C. § 203(m); (2) failed to allow Plaintiff and Class Members to retain all their tips – specifically, Defendants failed to administer a lawful tip pool by requiring

its servers (who Defendants only pay $2.13 per hour) to pay Defendants' business expenses; 3) required Plaintiff and Class Members to perform nontipped work that was *unrelated* to their tipped occupation (i.e. dual jobs); and 4) required Plaintiff and Class Members to perform non-tipped work that, although related to their tipped occupation, exceeded 20 percent (20%) of Plaintiff and Class Members' time worked during a workweek. *See, e.g.,* 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Mayhue's Super Liquor Stores, Inc*, 464 F.2d at 1199 (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage.); *Apple Illinois, LLC*, 739 F.3d at 1075 (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties … such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Applebee's Int'l, Inc.*, 638 F.3d at 880 ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time").

53. Defendants cannot use Section 203(m) as an affirmative defense to the payment of minimum wage because Defendants failed to follow federal law and violated Section 203(m) – an affirmative defense – in that Defendants unlawfully (1) failed to inform Plaintiff and Class Members of the tip credit pursuant to 29 U.S.C. § 203(m); (2) did not allow Plaintiff and Class Members to retain all of their tips by requiring Plaintiff and Class Members to pay for Defendants' business expenses; (3) required Plaintiff and Class Members to perform non-tipped work that was *unrelated* to Plaintiff and Class Members' tipped occupation (i.e., "dual jobs"); and (4) required

Plaintiff and Class Members to perform non-tipped work that, although related to Plaintiff and Class Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek.

54. Defendants' illegal practices in violation of the FLSA have resulted in a forfeiture of the "tip credit." Consequently, Defendants are liable to Plaintiff and Class Members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

55. Because there are other putative plaintiffs who are similarly situated to Plaintiff with regard to work performed and Defendants' compensation policies, Plaintiff brings this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.

## VIII. DAMAGES SOUGHT

56. The foregoing paragraphs are fully incorporated herein.

57. Plaintiff and Class Members are entitled to recover compensation for the hours worked for which Plaintiff and Class Members were not paid at the federally mandated minimum wage rate.

58. Plaintiff and Class Members are entitled to all of the misappropriated funds, including repayment of all expenses Defendants required Plaintiff and Class Members' to incur.

59. Plaintiff and Class Members are entitled to reimbursement of the amounts Defendants charged Plaintiff and Class Members for items used in connection with their employment as servers for Defendants.

60. Plaintiff and Class Members are also entitled to an amount equal to all of the unpaid wages (including all misappropriated tips and illegal charges) as liquidated damages as

Defendants' actions were not based upon good faith. *See* 29 U.S.C. § 216(b).

61. Plaintiff and Class Members are entitled to recover attorneys' fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

### IX. PRAYER

62. Plaintiff prays for judgment against Defendants, jointly and severally, and in favor of Plaintiff and Class Members as follows:

    a. For an order pursuant to section 216 of the FLSA finding Defendants liable for unpaid minimum wages due to Plaintiff (and those who may join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages due to Plaintiff (and those who may join in the suit);

    b. For an order awarding Plaintiff (and those who may join in the suit) an amount of pre-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

    c. For an order awarding Plaintiff (and those who may join in the suit) attorneys' fees;

    d. For an order awarding Plaintiff (and those who may join in the suit) the costs of this action; and

    e. For an order granting such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
      Drew N. Herrmann
      Texas Bar No. 24086523
      *drew@herrmannlaw.com*

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
(817) 479-9229 – telephone
(817) 887-1878 – fax
ATTORNEYS FOR PLAINTIFF
AND PROPOSED CLASS MEMBERS

## Notice of Consent



I, __Cody Champagne_____, consent and agree to be a party-plaintiff to a lawsuit brought under the Fair Labor Standards Act for claims of unpaid wages against my former employer(s). I understand that this lawsuit is brought under the Fair Labor Standards Act. I hereby consent, agree, and opt-in to become a party-plaintiff and be bound by any judgment of the Court or any settlement of this action. I also designate Herrmann Law, PLLC, its associated attorneys, and any other attorneys with whom they may associate ("the Attorneys") to prosecute my wage claims.

In the event the case is certified and then decertified, I authorize Herrmann Law, PLLC to use this Consent Form to re-file my claims in a separate or related action against my employer.

_[DocuSigned by: 67BE7CBF8D574F5...]_
Signature

6/5/2019
Date

Cody Champagne
Printed Name