**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | |
|---|---|
| **Cody Champagne on behalf himself of all others similarly situated under 29 U.S.C. § 216(b)**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**Reata Restaurants Inc. and Reata Restaurants Management Co. LLC,**<br><br>*Defendants.* | No. **4:19-cv-00028-DC-DF**<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR MOTION TRANSFER VENUE |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR MOTION TO TRANSFER VENUE**

---

Defendants make a painstaking attempt to avoid asking <u>this Court</u> – the court assigned to this matter – to compel arbitration. Defendants deliberately avoid asking this Court to compel arbitration and instead choose to test this Court's temperature with regard to the claims and the purported arbitration agreement by strategically phrasing the issues raised in their Motion as purely jurisdictional. To be sure, Defendants have not requested this Court to compel arbitration, but instead Defendants' are proclaiming to reserve some right to compel arbitration at a future date in a different court. At best, Defendants' Motion asks the <u>Northern District of Texas,</u> to issue relief in this case while currently pending in the Western District of Texas. *See* [Dkt. 22] at pg. 10 ("Reata respectfully requests that the Northern District of Texas, Fort Worth Division dismiss this lawsuit and compel arbitration").

Though Defendants' Motion does not ask this Court to compel arbitration, Defendants have requested this Court to dismiss (or transfer) the case for improper venue and dismiss the claims

asserted against Reata Inc. because Defendants contend that Reata Inc. does not meet the FLSA's definition of an "employer." However, venue is proper in this Court and Defendants have failed to carry their burden to warrant this Court transferring venue. Moreover, Reata Inc. is a proper employer and should not be dismissed from this lawsuit.

## I.     EMPLOYER-EMPLOYEE RELATIONSHIP

Defendants argue that Reata Inc. is not an employer as defined under Section 203(d) of the FLSA[1] and ask this Court to dismiss Reata Inc. from this lawsuit. [Dkt.22]. In a single, conclusory statement, Defendants boldly proclaim, "[h]olding companies such as Reata Restaurants Inc. are not 'employers' for the purposes of the FLSA, even if such companies assist in payroll services." [Dkt. 22] pg 11. Other than this single conclusory statement, Defendants provide no evidence or other legal authority to support their contention that Reata Inc. is not an employer. Based upon this single allegation, Defendants summarily ask the Court to dismiss Reata Inc. from the lawsuit. However, despite Defendants' attempt to have Reata Inc. summarily dismissed from this lawsuit, the undisputed facts show that Reata Inc. meets the FLSA's definition of an employer.

Defendants improperly attempt to have Reata Inc. dismissed from this lawsuit by citing to a single summary judgment case that Defendants purport is in support of their proposition that a holding company can never be held liable under the FLSA's definition of an employer. [Dkt. 22] at pg. 5. (Defendants maintain that Reata Restaurant, Inc. acts as a holding company of Reata Restaurant Management Co., LLC and did not employ Plaintiff and Opt-in Plaintiffs). The United States Supreme Court has stated that the FLSA's definition of employer is "the broadest

---

[1] In their Motion, Defendants incorrectly cite to 29 U.S.C. § 207(d), a section of the FLSA that has been repealed since 1974. [Dkt. 22] pg.11. Plaintiff provides the correct citation, *see* 29 U.S.C. § 203, for "employer" as defined by the FLSA.

definition that has ever been included in any one act." *See United States v. Rosenwasser*, 323 U.S. 360, 363n(1945); *Turner v. Med. Case Mgmt. & Soc. Servs.*, 2018 U.S. Dist. LEXIS 179110, at *10 (N.D. Tex. 2018) ("remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications").

First, any contention by Defendants that Reata Inc. cannot be an employer because Reata Management was "the" employer is misplaced. An employee can simultaneously have more than one employer, each of whom is jointly and severally liable for violations of the Act. *See* 29 C.F.R. § 791.2 (defining joint employment and describing situations in which it arises); *see also English v. Tex. Farm Bureau Bus. Corp.*, 2018 U.S. Dist. LEXIS 172930, at *12 (W.D. Tex. 2018) (stating that "'employer' has been interpreted to encompass one or more joint employers[]"); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998) (holding that the FLSA contemplates several simultaneous "employers"); *Herman v. Hector I. Nieves Transport, Inc.*, 91 F. Supp. 2d 435, 444 (D.P.R. 2000) (finding that, both, the president and secretary-treasurer of the defendant-company were individually liable as employers pursuant to 29 U.S.C. 203(d)).

Second, Cathy Snoddy's declaration makes the conclusory allegation that Reata Inc. "does not employ Plaintiff[s]." Ms. Snoddy's declaration provides no facts or other bases to support any argument that Reata Inc. should be dismissed because it is not an employer. Moreover, Defendants' attempt to rely on Ms. Snoddy's conclusory statement is futile because Reata Inc.'s employer status is a legal determination. *See Joaquin v. Coliseum Inc.*, 2016 U.S. Dist. LEXIS 174834, at *7 (W.D. Tex. 2016) ("Whether a person or an entity is an 'employer' under the statute is a question of law.") (citation omitted). Again, Defendants' attempt to focus on the facts that support Reata Management's liability as an employer is misplaced because there can be more than one employer. *See e.g.*, *English*, 2018 U.S. Dist. LEXIS 172930, at *12; *see also Gray v. Powers*, 673

F.3d 352, 357 (5th Cir. 2012) (stating that the "Fifth Circuit 'has on several occasions found employment status even though the defendant-employer had no control over certain aspects of the relationship,' . . ."). The fact that Defendants concede that Reata Management is an employer has no bearing on the employer status of Reata Inc.

Here, Defendants have failed to provide any evidence controverting the facts pled in Plaintiff's Amended Complaint, which supports Reata Inc.'s employer status. Plaintiffs' Complaint specifically describes the interrelationships between Defendants in a manner that plausibly implies an actionable employment relationship under the FLSA. [Dkt. 18]. Plaintiff specifically alleges an employment relationship and "single enterprise" through Defendants unified operation and common control, engaged in the performance of related activities for a common business purpose – namely, the operation of the Reata restaurants. [Dkt. 18] at pg. 5-6 ¶¶ 22-23; *see also* [Id.] at pg. 6 ¶ 24 (Defendants advertise together on the same website,[2] share common management between restaurant locations, have similar ownership, and maintain the same principal office at: 1401 North Bowie Drive, Weatherford, Texas 76086[3]). Plaintiff's Amended Complaint further alleges employer relationship and joint enterprise by virtue of the policies and procedures set forth by Defendants governing Plaintiff's and Opt-in Plaintiffs work and compensation. [Dkt. 18] at pg. 6-8 ¶¶ 25-31. Plaintiff describes how these policies are enforced, how Defendants controlled Plaintiff's work and exercised discretion over employment conditions, and how the policies are implements. [Id.] at pg. 8-10 ¶¶ 32-40. Defendants arguments are is insufficient to 1) dismiss Plaintiff's claims under the FLSA; 2) dismiss Plaintiff's claims against Reata Restaurant, Inc; and 3) support a motion to dismiss for improper venue.

---

[2] https://www.reata.net/
[3] Defendants' own evidence further supports the fact that both Reata Management and Reata Inc. maintain a joint business address and headquarters. *See* [Dkt. 22-1] (Ex. 1) (Snoddy Decl.) at page 1 ¶ 4.

Alternatively, the parties have not conducted any merits discovery and Defendants have yet filed a motion that amounts to a request for this Court to grant summary judgment as to Reata Inc.'s status as an employer. Plaintiffs should be given an opportunity to conduct discovery before responding to Defendants' motion for summary judgment. Therefore, in the alternative, Plaintiffs respectfully ask this Court to stay ruling on Reata Inc.'s status as an employer until Plaintiffs have an opportunity to conduct discovery and then file a response to Defendants' arguments.

## II. MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER

### A. VENUE IN THIS DISTRICT IS PROPER BECAUSE BOTH DEFENDANTS RESIDE AND HAVE SUFFICIENT CONTACTS IN THE WESTERN DISTRICT OF TEXAS.

"Venue is appropriate in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. . ." *Gutierrez v. Drill Cuttings Disposal Co.*, 319 F. Supp. 3d 856, 862 (W.D. Tex. 2018)(citing 28 U.S.C. § 1391(b)). Corporations in states with multiple districts such as Texas, the corporation-defendant "shall be deemed to reside in any district in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State. . ." 28 U.S.C. § 1391(d); *see also* 28 U.S.C. § 1391(c)(1) ("[A]n entity … whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

Here, Defendants' Motion to Dismiss for Improper Venue or Transfer are supported by matters irrelevant to jurisdiction. Specifically, Defendants' argument to transfer venue rests entirely on dismissing Reata Inc. from this lawsuit. However, venue is proper in the Pecos Division of the United States District Court for the Western District of Texas under 29 U.S.C. § 1391(b)(1) based upon Defendants' own admission that they "reside" in the Northern District of Texas and

Western District of Texas. To be sure, Defendants correctly assert that venue is proper under § 1391(d) because Reata Inc. "reside[s] in both the Northern District of Texas, Fort Worth Division, and Western District of Texas, Pecos division." [Dkt. 22] pg. 12. Yet, Defendants then claim that venue is not proper in the Western District of Texas because Reata Inc. "is not a proper party to the FLSA claim as it is not the 'employer.'" *Id.; see also Id.* at pgs. 12-13 ("Without Reata Restaurant, Inc. as a party, [] venue is improper as to [Reata Restaurant Management Co. LLC].")

However, venue is proper in the Western District of Texas, Pecos Division under §1391(b)(1) and §1391 (b)(2), regardless of whether Defendant - Reata Restaurant, Inc. is an employer under the FLSA. *see* § 1391(b)(1) and § 1391(d). Specifically, Defendants' evidence actually provides stronger support for maintaining venue in the Western District of Texas based upon Reata Management's contacts than it does for Reata Inc. The declaration filed in support of Defendants' motion inexplicably states: "Reata Restaurants Management Co., LLC operates two restaurants in Texas; one restaurant is in Fort Worth and one restaurant is in Alpine." *See* [Dkt. 22-1] (Ex. 1) (Snoddy Decl.) at pg. 1 ¶ 5. Based upon Defendants' own evidence, each Defendant is doing business in Alpine, Texas and subject to personal jurisdiction there. Therefore, under § 1391(d), venue is proper in the Western District of Texas as to one or both Defendants. Accordingly, Defendants' Motion to Dismiss for Improper Venue or Transfer under 28 U.S.C. § 1406(a) should be denied.

**B.** **VENUE IN THIS DISTRICT IS PROPER BECAUSE EVENTS GIVING RISE TO THIS ACTION OCCURRED IN BOTH ALPINE, TEXAS AND FORT WORTH, TEXAS.**

Alternatively, "[v]enue is appropriate in: . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. . ." *Gutierrez*, 319 F. Supp. 3d at 862 (citing 28 U.S.C.

§ 1391(b)). Defendants contend that venue is only proper in the Northern District of Texas because a greater number of facts support venue in the Northern District of Texas rather than the Western District of Texas. [Dkt. 22] at pg. 11 (Defendants maintain that venue is proper in the Northern District of Texas because Plaintiffs only worked in at the Fort Worth, Texas restaurant.). This irrelevant (and incorrect). *See Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013)("[T]he fact that venue would also be proper in [a] [different] District of Texas is irrelevant. According to the Fifth Circuit, "venue does not have to be the place where the most relevant events took place, but only where a 'substantial' part of the events or omissions giving rise to the claims occurred."). Whereas, here, the FLSA violations occurred in multiple districts, venue may be proper in any of those districts where the FLSA violations occurred. *See Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 722("Courts have recognized that "venue may be properly laid in more than one district, 'and the 'substantial part of the events or omissions test does not require that the chosen venue be the <u>best</u> venue . . . the selected district must simply have a substantial connection to the claim."). The events and omissions giving rise to Plaintiff's claims also occurred in Alpine, Texas, located within the Western District of Texas, therefore venue is proper in this District under 28 U.S.C. § 1391(b)(2).

C.    **TRANSFER OF VENUE PURSUANT TO  28 U.S.C. § 1406(A) IS INAPPLICABLE TO THIS ACTION BECAUSE VENUE IS PROPER IN THIS DISTRICT UNDER 28 U.S.C. § 1391.**

Defendants' Motion fails to discuss or address transfer under 28 U.S.C. § 1406. Defendants only cite to and reference 28 U.S.C. § 1406 in the title page, [Dkt. 22 pg. 1], and a subheading, [Dkt. 22 pg. 11]. Defendants mere reference to § 1406 in the title and a subheading within their Motion is insufficient and provides not support or reasoning for transfer under § 1406. Although Defendants fail to discuss or address transfer under §1406, transfer under § 1406 is not appropriate.

Transfer of venue under 28 U.S.C. § 1406(a) is only permissible when the current venue is improper. *See Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 721 (under §1406(a) "a court may dismiss or transfer a case if it has been filed in the "wrong" division or district). As discussed above, venue is proper in this District, (*see* Section II. A. and B.) (discussing venue).

### III.   MOTION TO TRANSFER VENUE UNDER 28 U.S.C. §1404(A)

In the alternative to dismissal, Defendants move the Court to transfer this action to the Northern District of Texas, Fort Worth Division pursuant to 28 U.S.C. §1404(a). [Dkt. 22] page 13.  As discussed in greater detail below the purported forum selection clause is not enforceable by Defendants who are not parties to the agreement (*see* Section IV. A.) and the forum selection clause has no effect post termination, (*see* Section IV. B.). Finally, concluding that the balance of private and public factors do not weigh in favor of transfer and that judicial economy will not be better severed if this case is transferred to the Northern District of Texas, Plaintiffs respectfully requests this Court to deny Defendants' Motion.

### A.   DEFENDANTS ARE NOT PARTIES TO THE FORUM SELECTION CLAUSE THEY SEEK TO ENFORCE UNDER 28 U.S.C. §1404(A).

First, Defendants' Motion is devoid of any argument or allegation that Reata Inc. is a party to the Program. Defendants only allege that the Program containing the purported forum selection clause was entered into by Reata Management. [Dkt. 22] pg 22. In fact, Reata Inc. is not a party to the Program, a fact Defendants appear to concede, and therefore, Reata Inc. cannot enforce the purported forum selection clause. It can also be inferred from Defendants' Motion that the only purpose for seeking to dismiss Reata Inc. is because Defendants' acknowledge that there is no valid or enforceable forum selection clause that can be enforced by Reata Inc.

Moreover, despite Defendants' contentions, the forum selection clause also does not include Reata Management. As acknowledged by Defendants throughout their Motion, the forum

section clause contained within the Program purports to bind the "Company" and its employees. However, the Program's definition of the "Company" fails to include any reference to either Reata Management or Reata Inc. The Program's definition of Company is "[t]his Program applies to employees of JMK Holdings Management Company, LLC and its subsidiaries, affiliated employers, successors, and assigns (the "Company")." [Dkt 22-3] (Ex. 1-B) pg 4. However, for reasons that remain unclear, Defendants' Motion fails to even mention JMK Holdings, much less describe how Reata Inc. or Reata Management fits, if at all, within the corporate web of JMK Holdings or the Program's definition of "Company." Furthermore, Defendants could not argue that JMK Holdings is the holding company for Reata Management, because Defendants already argued that Reata Inc is the holding company for Reata Management to support their position that Reata Inc. is not a proper employer.

**B.    THE PURPORTED FORUM SELECTION CLAUSE DOES NOT APPLY TO DISPUTES POST-TERMINATION, THEREFORE CANNOT BE INVOKED BY DEFENDANTS.**

"For a party to invoke a forum-selection clause in a dispute post-termination, the parties must have intended for it to apply to those disputes." *TSI USA, LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 3783, at *23 (N.D. Tex. 2017) (citations omitted). Here, the "Program" containing the purported forum selection clause provides that certain provisions shall survive an employee's termination. [Dkt. 22-3] (Ex 1-B) at pg 24, *second to last  paragraph*, (". . . no such change to or termination of this Program will alter the arbitration requirements with respect to, or otherwise affect, claims that have been raised . . . that is filed prior to the effect date of the change or termination"); *see also*., [Dkt. 22-3] (Ex 1-B) pg 24, *first paragraph*, ("If your employment with the Company is terminated, the Program still applies to you for any covered dispute that arose in connection with your employment with the company or such termination."). These clauses clearly

indicate that only certain provisions of the "Program" remain in effect post-termination and does not include the purported forum selection clause. *See e.g., Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 3783 at *13-14 (stating that "[t]he omission of the Forum-Selection Clause from the Survival Clause therefore suggests that the parties did not intend for the Forum Selection Clause to survive termination of the agreement").

It is even more apparent that the purported forum selection clause was not intended to apply post-termination because the terms of the purported forum selection clause do not indicate that it would survive post termination. [Dkt. 22-3] (Ex 1-B) pg 24, *last paragraph* ("This Program shall be governed by the laws of the state of Texas, except to the extent preempted by federal law or as otherwise specified in this Program document. To the extent possible, jurisdiction and venue for all disputes subject to this Program, including disputes concerning the Program itself, shall be in Tarrant County, Texas (unless otherwise agreed to in writing by you and the Company).").

Here, the forum selection clause in the Program does not survive termination and therefore it has no effect on this action. *See Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 3783, at *23 ("[W]here the agreement suggests that the forum-selection clause does not survive — [] for instance, not including it in a clause identifying the terms that will survive the agreement — the provision has no effect after the contract's termination.")(citation omitted).

**C.     DEFENDANTS DID NOT SHOW THAT TRANSFER OF VENUE WOULD BE FAR MORE CONVENIENT FOR THE PARTIES AND WITNESSES IN THE INTEREST OF JUSTICE**

"Generally, a court applying the doctrine of *forum non conveniens* must 'determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private-and public-interest factors and giving deference to the plaintiffs choice of forum.'" *Morgan-Rinehart v. Van De Perre*, 2017 U.S. Dist. LEXIS 56392, at

*12 (W.D. Tex. 2017) (citing *Barnett v. DynCorp Int'l L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016)).  However, the analysis under 28 U.S.C. §1404(a) changes when "transfer is sought based on a forum selection clause." *Shaffer*, 2017 U.S. Dist. LEXIS 94096, at *8-9 (W.D. Tex. 2017) (internal citations omitted).

Because the alleged forum selection clause is not enforceable by Defendants (non-parties to the agreement), (*see* Section IV. A.) and has no effect post termination, (*see* Section IV. B.), the Court should determine transfer under §1404(a) by examining both private and public interest factors. "Section 1404(a) allows district courts to transfer an action to another proper venue 'for the convenience of parties and witnesses' if such a transfer will be 'in the interest of justice." *Halliburton Energy Servs. v. NL Indus.*, 2007 U.S. Dist. LEXIS 5743, at *50-51 (S.D. Tex. 2007) (citing 28 U.S.C. § 1404(a) (2006); *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) ("The decision to transfer is made to prevent waste of time, energy, and money  and to protect litigants, witnesses, and the public against unnecessary inconvenience and expenses."). However, "[t]he court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Siverston v. Clinton*, 2011 Wl 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (citations omitted). "The determination of  'convenience' turns on a number of private and public factors, none of which are given dispositive weight." *Halliburton Energy Servs.*, at *50-51.[4] The party seeking the transfer bears the burden of demonstrating why transfer is appropriate. *Id.*, at *51 (citations omitted).

---

[4] Private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) Public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* These factors are not

**1. Private interest factors do not support transfer for convenience.**

"The availability and convenience of witnesses is arguably the most important of the factors listed." *Lebouef v. Gulf Operators*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998). Defendants argue that transfer is "obviously most convenient for the parties, counsel, and witnesses," however Defendants do not provide the identity of key witnesses (or other potential witnesses) necessary to support transfer on this basis. [Dkt. 22] pg 15. Specifically, Defendants do not identify whether the witnesses are parties or non-party witnesses, provide any names of its potential witnesses, or the substance of their anticipates testimony. [Id.]. *See Lebouef*, 20 F. Supp. 2d at 1060 ("the moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located" and "must specifically identify the key witnesses and outline their testimony.); *see also*., *EEOC v. Mustang Mobile Homes, Inc*., 88 F. Supp. 2d 722, 726 (W.D. Tex. Dec. 10, 1999) (Defendant failed to show any problem with convenience of witnesses because Defendant 1) did not identify any witnesses it intended to call at trial or the substance of any witness' expected testimony; and 2) did not produce any evidence to suggest that any of Defendant's potential witnesses or Defendant could or would not attend a trial in the Western District of Texas.).

Defendants also argue that "any such witnesses" would not be within the 100-mile subpoena requirement in the Western District of Texas, Pecos Division. [Dkt. 22] page 15. However, Defendants only focus on potential witnesses located in Weatherford, Texas, or Fort Worth, Texas and do not address potential witnesses who work at their restaurant in Alpine, Texas.

---

"necessarily exhaustive or exclusive" and non can be said to be dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co*., 358 F.3d 337, 340 (5th Cir. 2004).

[Id.] [5] Furthermore, Defendants fail to acknowledge that (1) Defendants own and operate a restaurant in Alpine, Texas which would mean that Opt-in plaintiffs and other potential witness, such as mangers, HR personnel, and other employees are within the subpoena requirement; and (2) the potential witness encompass former and current employees of Defendants; and such anticipated witnesses can be compelled by Defendants to attend trial. Therefore, Defendants have not shown any inconvenience for their potential witnesses or for the Defendants themselves. *See Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) ("[a] movant must specifically identify the key witnesses and outline the substance of their testimony.").

Shifting the cost of attendance from one party to the other is insufficient to support transfer under Section 1404(a). *See Mitchell v. McKibbon Hotel Group, Inc.*, 2018 U.S. Dist. LEXIS 176914 at *5 (W.D. Tex. Feb. 22, 2018)("[v]enue should not be transferred when the result would be to shift the expense and inconvenience form one party to another") (citation omitted). While Defendants argue that it is costly and inconvenient for this lawsuit to proceed in the Western District of Texas, at the same time, they are willing to make their former employees (who worked at and live around the Alpine, Texas location) and current employees (who work at the restaurant in Alpine, Texas) endure possible costs and inconveniences of traveling to the Northern District of Texas, Fort Worth Division. Defendants have not shown that the Northern District of Texas, Fort Worth Division, is "clearly more convenient."

Defendant do not address the factor relating to access of documents and other sources of proof; therefore, it should not hold much weight, if any. Courts have stated that when a defendant fails to show that any documents of concern, even if voluminous, could not be made available in

---

[5] Defendants also discuss the location of both Plaintiff's counsel and Defendant's counsel. However, most courts find this as an "irrelevant and improper" factor in determining a transfer of venue question. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

plaintiff's choice of venue, then the factor does not hold much weight in determination. *Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 573 (N.D. Tex. Feb. 25, 2005). Moreover, Defendants have failed to address the location of the documents or any reason that any records that might be located in the Northern District of Texas could not be made available in this forum electronically.

### 2. Public interest factors do not "overwhelmingly favor" dismissal or transfer.

Administrative difficulties flowing from court congestion – Defendants contend that this factor is inapplicable because their present Motion is subject to a Motion to Compel Arbitration in the Northern District. [Dkt. 22] at pg 15. Defendants contention is misplaced. This factor is considered in determining whether transfer is in conveniens, regardless of any hypothetical motions the requesting party contends that it may file at some future date in the transferee court.

According to the United States Courts Federal Judicial Caseload Statistics of 2018, the Northern District of Texas is far more congested than the Western District of Texas.[6] For example, in 2018, the total number of cases before the Northern District of Texas was 3,082 and the total number of cases before the Western District of Texas was 2,429 - a difference of 653 cases.[7] The Western District of Texas had 1,000 fewer cases in the pretrial sage than the Northern District of Texas. As shown by the United States Courts, Federal Judicial Caseload Statistics 2018 Tables, the Northern District of Texas is far more congested than the Western District of Texas.[8] This factor clearly weighs in favor of maintaining venue in the Western District of Texas.

Local interest in having localized interests decided at home "generally favors the venue where the acts giving rise to the lawsuit occurred." *Demond v. Infiniti HR, LLC*, 2018

---

[6] United States Courts, Federal Judicial Caseload Statistics 2018 Tables, https://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables (last visited August 5, 2019).

[7] *Id.*

[8] *Id.*

U.S. Dist. LEXIS 147985, at *18 (N.D. Tex. 2018) (citations omitted). Defendants' restaurants are located in Alpine, Texas and Fort Worth, Texas and both are subject to the claims asserted by Plaintiffs. [Dkt 18]. This factor does not weigh in favor of dismissal or transfer. The familiarity of the forum with the law that will govern the case and avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law – does not weigh in favor of dismissal or transfer. Based upon the foregoing, Plaintiffs' respectfully request this Court to deny Defendants' Motion and allow this action to remain in the Western District of Texas, Pecos Division.

### IV. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND COMPEL ARBITRATION IN TARRANT COUNTY, TEXAS.

Defendants discuss dismissal for lack of subject matter jurisdiction, however Defendants are not presently requesting or seeking dismissal under Rule 12(b)(1) by this Court. *See* [Dkt. 22] pg 1 (". . ., <u>Subject to Motion</u> to Dismiss Claims Against Defendants for Lack of Subject Matter Jurisdiction. . ."); *see also*., [Id.] pg 22 ("Reata respectfully requests this Court [District Court in the Western District of Texas] to dismiss the suit for improper venue or alternatively transfer the suit . . ., and <u>for a District Court in the Northern District of Texas to dismiss the suit for lack of jurisdiction and compel arbitration</u> . . .") (emphasizes added).[9] Although Defendants have not moved or requested this Court to dismiss for lack of subject matter jurisdiction, Plaintiff briefly discusses (see below) the issues with Defendants' challenges to subject matter jurisdiction.

### A. DISTRICTS COURTS OF TEXAS HAVE SUBJECT MATTER JURISDICTION OVER THIS ACTION.

Rule 12(b)(1) "allows dismissal of an action where the court lacks subject matter jurisdiction." *Cobarobio v. Midland Cty.*, 2014 U.S. Dist. LEXIS 200740, at *9 (W.D. Tex. 2014) "District courts have jurisdiction over 'all civil actions arising under the constitution, laws, or

---

[9] *See also*. [Dkt. 22] page 16 ("Reata respectfully requests that the Northern District of Texas, Fort Worth Division, District Court dismiss this lawsuit and compel arbitration."); [Dkt 23] (proposed order).

treaties of the United States.'" *Jones v. Gonzales*, 2013 U.S. Dist. LEXIS 195619, at *8-9 (W.D. Tex. 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 195617 (W.D. Tex. 2013) (citing 28 U.S.C. § 1331). Therefore, to establish federal-question jurisdiction "the federal courts must look to the face of the plaintiff's well-pleaded complaint to see if a federal question exists." *Id*. This Court has subject-matter jurisdiction over this matter because Plaintiff asserts claims arising under federal law. [Dkt. 18] at pg. 4 ¶ 15. Specifically, Plaintiff asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* [Id]. Because Plaintiff's well-pleaded complaint asserts claims under the FLSA, [Dkt.18], Plaintiff has invoked federal question jurisdiction; and, dismissal for lack of subject matter jurisdiction lacks is not proper. Plaintiff therefore respectfully requests that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction be denied.

**B.    DEFENDANTS HAVE NOT REQUESTED THIS COURT TO COMPEL ARBITRATION.**

This Court should not compel arbitration until a party has requested this Court to compel arbitration, at which point, the parties will be given a chance to brief this Court on their respective positions regarding the enforceability of any purported agreements to arbitrate. While Defendants could have asked this Court to compel arbitration, Defendants did not request this Court to compel arbitration. *See Educ. Mgmt. Servs., LLC v. Tracey*, 2015 U.S. Dist. LEXIS 85259, at *4 (W.D. Tex. 2015)("a motion to compel arbitration under § 4 of the FAA is a request that the court compel specific performance of an agreement to arbitrate, and may be made in any district court which has subject matter jurisdiction over the underlying dispute"); *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1278 (5th Cir. 1975) (holding that Mississippi district court properly ordered parties to arbitrate in New Jersey in accordance with the terms of their contract); *National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 331 (5th Cir.

1987) (recognizing that *Dupuy-Busching* empowers district courts to compel arbitration outside district where court sits).

Defendants' Motion only asks this Court to dismiss for improper venue or transfer venue and specifically only asks the Northern District of Texas to compel arbitration. *See* [Dkt. 22] at pg. 1 (". . . this Court should dismiss or transfer this case to the Northern District of Texas, Fort Worth Division, so that the Northern District can properly compel arbitration. . ."); [Id.] at pg. 16 ("[Defendants] respectfully request [] the Northern District of Texas, Fort Worth Division, District Court dismiss this lawsuit and compel arbitration . . ."); [Id.] at pg. 12 (". . . requests this Court to dismiss [] suit for improper venue or alternatively transfer suit to the Northern District . . ., and for a District Court in the Northern District of Texas to . . . compel arbitration in the selected forum. . ."); [Dkt. 24] at pg 2 (same); [Dkt. 23] (same); [Dkt. 24] at pg 10 (PRAYER)("Defendant[s] respectfully ask this Court to dismiss Plaintiff's lawsuit in full with prejudice, that costs be assed against Plaintiff, and that Defendant[s] be granted all relief to which it is entitled, including – but not limited to – an award of attorney's fees and costs incurred in the defenses of this action."). Plaintiffs persist that any purported arbitration clause contained within the "Program" attached to Defendants' motion, [Dkt.22-3] (Ex 1-B), is littered with issues preventing enforceability and Defendants' request for the NDTX to compel Plaintiffs' claims to arbitration.

## C.   DEFENDANTS WAIVED THEIR RIGHTS TO ARBITRATE.

Defendants contend that they filed their "venue motions with [their] Motion to Compel Arbitration to avoid any argument that it has waived its rights to compel arbitration. This is clearly not the case. Here, Defendants repeatedly state in their motions and answer that they are not requesting this Court to compel arbitration. *See* Section V.B. "[T]he right to arbitration, like any contractual right, may be waived." *Tellez v. Madrigal*, 292 F. Supp. 3d 749, 757 (W.D. Tex. 2017).

A party waives its right to arbitrate when (1) that party substantially invokes the judicial process and (2) the party's steps towards litigation thereby causing detriment or prejudice to the party opposing arbitration. *Tellez*, 292 F. Supp. 3d at 757.

### 1. Defendants substantially invoked the judicial process by requesting decisions on the merits

"Invoking the judicial process is synonymous with 'the act of implementing or enforcing the judicial process.'" *Tellez*, 292 F. Supp. 3d at 757-58 (citation omitted). "To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Tellez*, 292 F. Supp. 3d at 758. "The Fifth Circuit has made [it] clear that '[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate.'" *Tellez*, 292 F. Supp. 3d 749, 759 (citing *In re Mirant Corp.*, 613 F.3d at 589 (citation omitted)).

Defendants are clearly seeking a decision on the merits before attempting to arbitrate. First, Defendants attempt to shift the Courts focus from their merit-based motions by asserting that their motions are based on venue and jurisdiction. Yet, Defendants substantially rely on employer status and liability to support their alleged venue and jurisdiction motions. [Dkt. 22] at pg. 5-7. In fact, Defendants spend considerable time defining employer under the FLSA; arguing that Reata Inc. is not a proper party; and asserting that venue is improper because Reata Restaurant Inc. is not an employer. [Id.]. However, FLSA definitions (*i.e.* "employee" or "employer") are separate and distinct issues not pertaining to venue or jurisdiction. *See Hopkins v. Cornerstone Am.*, 512 F. Supp. 2d 672, 681 (N.D. Tex. 2007) ("the FLSA'[s] definitions section is 'separate from the jurisdictional section and does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'"). Moreover, the determination of whether an individual is an

employee or whether an individual or entity are employers under the FLSA, therefore liable for FLSA violations goes to the merits of Plaintiff's FLSA claims. *See DeVore v. Lyons*, 2016 U.S. Dist. LEXIS 147306, at *12-13 (N.D. Tex. 2016) (citing *Hopkins v.*, 512 F.Supp.2d at 681 (holding that "whether the plaintiff was an 'employee' under the FLSA 'does not affect federal-court subject-matter jurisdiction but, instead' goes to the merits of the FLSA claim"). Defendants did not merely file a motion to dismiss, rather they asked the Court to award relief on several bases, including a motion seeking a determination of employer status and liability as to Reata Inc. A determination of whether Defendant or Defendants are employers under the FLSA go to the merits of Plaintiff's claims. *See e.g. MC Asset Recovery, LLC v. Castex Energy, Inc.*, 2009 U.S. Dist. LEXIS 28066, at *21 (N.D. Tex. 2009) ("By seeking to prove [Defendants] own allegations before demanding arbitration, rather than simply denying [Plaintiff's] allegations Defendants have engaged the judicial process.") Second, Defendants also seek to dismiss Plaintiff's claims with prejudice. [Dkt. 24] at pg. 10; *see e.g. MC Asset Recovery, LLC,* 2009 U.S. Dist. LEXIS 28066, at *22 ("Most indicative of an invocation of the judicial process is Defendants' attempt to secure a dismissal of [Plaintiff's] claims with prejudice. "Securing a ruling on the merits of a claim is inconsistent with a desire to arbitrate.").

Defendants failed to move to compel arbitration in the alternative, thereby unnecessarily delaying this action. Moreover, Defendants invoked the judicial process by seeking a decision on the merits that would bar Plaintiff's from further pursing its claims and by litigating specific claims (i.e. employer liability) they subsequently seek to arbitrate.

### 2. Defendants' conduct prejudiced Plaintiff and Opt-in Plaintiffs.

"Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Leal v. Sinclair Broad. Grp., Inc.*, 2017 U.S. Dist. LEXIS 62292, at *10-

11 (W.D. Tex. 2017). Here, Defendants seek a ruling on the merits (i.e. employer) and a dismissal with prejudice effectively bringing this case to end before any discovery has been conducted in regards to "employer" liability. This would damage Plaintiff's and Opt-in Plaintiffs' legal position, which is the sort of prejudicial harm that supports a finding of waiver. Defendants filing of a request seeking a decision on the merits and unexplained delay[10] in seeking to compel arbitration by this Court or moving to compel arbitration in the alternative, further supports a finding of waiver. *See e.g.*, *DHI Grp., Inc. v. Kent*, 2018 U.S. Dist. LEXIS 35170, at *12 (S.D. Tex. 2018) ("The court also found it significant that the defendant did not present the motion to compel arbitration as an actual alternative to the dispositive motions and instead seemed to be 'gam[ing] the system by seeking a decision on the merits while keeping the arbitration option as a backup plan in case the effort fails.'").

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to deny Defendants' Motion to Dismiss for Improper Venue or Motion to Transfer Venue [Dkt 22]. Plaintiffs further request the Court to deny Defendants' motion to dismiss. Plaintiffs further request that this action remain in the Western District of Texas, Pecos Division in the interest of justice, thereby preventing further delays.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
Drew N. Herrmann

---

[10] Defendants have not discussed or explained why this Court (where venue is proper under §1391) is not able to compel arbitration. Defendants are aware of that they may waive their right to arbitrate. [Dkt. 22] at page 7. Yet, Defendants do not file their motion to compel in the alternative nor do they state their reasons for not filing a motion to compel in the alternative. In contrary, moving to compel arbitration in this Court would have been more effective by preventing delay and not incurring expenses in defending against the motions filed by Defendants.

Texas Bar No. 24086523
*drew@herrmannlaw.com*

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, Texas 76102
(817) 479-9229 – telephone
(817) 887-1878 – fax
ATTORNEYS FOR PLAINTIFF
AND PROPOSED CLASS MEMBERS

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 9, 2019 a true and correct copy of the above document will be served on Defendants via CM/ECF.

*/s/ Drew N. Herrmann*
Drew N. Herrmann